United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Emanuel David Williams, Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 21-23287-Civ-Scola |
| | ) |
| City of Miami and others, | ) |
| Defendants. | ) |

### Order on Motion to Dismiss

This matter is before the Court on the Defendants' motion to dismiss. (ECF No. 7.) The Plaintiff filed an opposition (ECF No. 8), and the City filed a reply (ECF No. 9). After careful consideration of the parties' briefs and the relevant legal authorities, the Court **grants in part and denies in part** the Defendants' motion to dismiss. (**ECF No. 7**.)

1. **Background**

One night in late September 2019, police officers with the City of Miami were helping a woman remove property from an apartment. (ECF No. 1-1 at ¶ 9.) Emanuel Williams arrived at the apartment complex and realized that the property was being removed from his apartment. (*Id.*) Alarmed, Williams demanded information. (*Id.* at ¶ 10.) However, the police officers denied Williams access to his apartment and asked that he wait on the opposite side of the street. (*Id.* at ¶¶ 11–12.) Williams shared some choice words with the woman, indicating that whatever relationship that existed between the two of them was over. (*Id.* at ¶ 12.)

Williams began to record the interaction with his cell phone, and he shared some of his concerns with the officers. (*Id.* at ¶¶ 15, 19.) But throughout this interaction, Williams listened to the officers' commands and never interfered with the removal of property. (*Id.* at ¶¶ 23–25.) And at all times, Williams remained at least fifty feet from the entrance to the apartment complex. (*Id.* at ¶ 26.) Nonetheless, Officer Allen told Williams that he would be arrested if he continued to speak to the woman. (*Id.* at ¶¶ 13, 18.)

After about seventeen minutes, Officers Allen and Hernandez "got in Mr. Williams['s] face" as Williams filmed the officers' name tags. (*Id.* at ¶¶ 27–28.) After Williams again moved to the opposite side of the street, Officers Allen, Hernandez, and Gonzales cornered Williams by a fence. (*Id.* at ¶ 30.) Officer Gonzalez slapped Williams's cell phone out of his hand, and the three officers "jumped on Mr. Williams[,] throwing him to the ground, punching him, and

kicking him[.]" (*Id.* at ¶ 31.) Williams was then arrested for disorderly conduct and resisting arrest without violence. (*Id.*)

## 2. Legal Standards

### A. Motion to Dismiss

A court considering a motion to dismiss must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (internal punctuation omitted). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### B. Municipal Liability Under 42 U.S.C. § 1983

Any person acting under the color of state law who violates a constitutional right of another is liable for the injured party's losses. *See* 42 U.S.C. § 1983. Moreover, this liability applies to a municipality when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury[.]" *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694 (1978). However, there are limits on this liability. "[A] municipality cannot be subjected to § 1983 liability based upon theories akin to respondeat superior[;] . . . only deprivations arising from municipal custom or policy can result in municipal liability." *Anderson v. City of Atlanta*, 778 F.2d 678, 685 (11th Cir. 1985) (internal citations omitted) (citing *Monell*, 436 U.S. at 694). In other words, "[w]hen an injury is inflicted as the result of governmental policy or custom, the government is responsible under § 1983." *Id.*

In particular, to adequately state a claim for municipal liability under § 1983, a plaintiff must plead (1) that their constitutional rights were violated, (2) the municipality had a "custom or policy that constituted deliberate indifference to that constitutional right," and (3) that policy or custom caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). And to allege a "custom or

policy," a plaintiff must plead either "(1) an officially promulgated policy or (2) an unofficial custom or practice shown through the repeated acts of a final policymaker for the county." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). To meet the "deliberate indifference" standard, a plaintiff must allege that "the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

### 3. Analysis

Williams's complaint includes nine causes of action, consisting of: excessive force in violation of the Fourth Amendment; false arrest and false imprisonment in violation of the Fourth Amendment; failure to render aid in violation of the Fourteenth Amendment; state false arrest and false imprisonment; state battery; retaliation in violation of the First Amendment and 42 U.S.C. § 1983; intentional infliction of emotional distress; malicious prosecution; and unlawful policy and practice against the City of Miami. The Defendants moved to dismiss the entire complaint as a shotgun pleading and, in the alternative, to dismiss claims VII and IX, for intentional infliction of emotional distress and an unlawful policy and practice, respectively. The Court will address each ground for dismissal in turn.

### A. Shotgun Pleading

The Court denies the Defendants' motion to dismiss the complaint as a shotgun pleading. A "shotgun pleading" is one "calculated to confuse" and which fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320–23 (11th Cir. 2015). The Defendants argue that the complaint is a shotgun pleading as it repeatedly realleges all preceding paragraphs in each cause of action. (ECF No. 7 at 3.) While a complaint that does so can be a shotgun pleading, the hallmark is whether the complaint gives the defendants notice of the claims against them. *See Weiland*, 792 F.3d at 1320–23; *see also Aknin v. Experian Info. Sols., Inc.*, No. 17-22341-Civ, 2017 WL 4410815, at *2 (S.D. Fla. Oct. 3, 2017) (Scola, J.) (denying a motion to dismiss as while the plaintiff's causes of action each incorporated by reference all preceding paragraphs of the complaint, the complaint gave adequate notice of the claims against each defendant). Here, Williams's complaint gives adequate notice to the Defendants. Each cause of action specifies to whom it is against, and Williams identifies each Defendant by name when alleging specific facts. As the complaint apprises the Defendants of the

claims against them, the Court **denies** the Defendants' motion to dismiss the complaint as a shotgun pleading.

### B. Intentional Infliction of Emotional Distress

Under Florida law, to state a claim for the intentional infliction of emotional distress, a plaintiff must allege: "(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe." *Vilceus v. City of W. Palm Beach*, No. 08-80968-CIV, 2009 WL 2242604, at *5 (S.D. Fla. July 27, 2009) (Marra, J.). Williams does not contest that this claim should be dismissed (ECF No. 8 at 6), and the Court **grants** the Defendants' motion to dismiss Count VII for the reasons set out in the Defendants' motion. Therefore, Count VII of the complaint is dismissed with prejudice.

### C. Municipal Liability

Williams's complaint does not state a claim for municipal liability under § 1983. As an initial matter, Williams has not identified an officially promulgated policy. Rather, Williams alleges that the City has "interrelated de facto policies, practices, and customs." (ECF No. 1-1 at ¶ 95.) A de facto policy can constitute an unofficial custom, but it cannot be considered an "officially promulgated policy." *See Grech*, 335 F.3d at 1329. As Williams fails to identify any officially established policy in Miami, the Court holds that Williams has failed to allege an official policy. *See Moore v. Miami-Dade Cnty.*, 502 F. Supp. 2d 1224, 1231 (S.D. Fla. 2007) (Gold, J.) (holding that the plaintiff failed to plead an official policy by not identifying "any County ordinance, resolution, or administrative order").

Therefore, Williams may only proceed against the City by alleging "an unofficial custom or practice . . . shown through repeated acts of a final policymaker[.]" *Id.* at 1230 (quoting *Grech*, 335 F.3d at 1329). This custom must be a "widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (cleaned up) (quoting *St. Louis v. Proprotnik*, 485 U.S. 112, 127 (1988)). As the custom must be widespread and repeated, "random acts or isolated incidents are insufficient to establish a custom[.]" *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see also Casado v. Miami-Dade Cnty.*, 340 F. Supp. 3d 1320, 1328 (S.D. Fla. 2018) (O'Sullivan, M.J.) ("[T]he plaintiff must allege a 'pattern' of excessive force including specific facts of numerous incidents[.]"). To plead a pattern, the plaintiff must allege other incidents involving facts "substantially similar to the case at hand." *See Bowe v. City of Hallandale Beach*, No. 0:16-

CIV-60993, 2017 WL 5643304, at *5 (S.D. Fla. Aug. 7, 2017) (Dimitrouleas, J.); *see also Gurrera v. Palm Beach Cnty. Sheriff's Office*, 657 F. App'x 886, 893 (11th Cir. 2016) ("A pattern of similar constitutional violations is ordinarily necessary.") (cleaned up) (quoting *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011)). Moreover, the plaintiff must allege that a final policymaker for the municipality "know[s] about [the custom] but failed to stop it." *Brown*, 923 F.2d at 1481. Last, a plaintiff must allege that the municipality was "at fault in some sense for establishing or maintaining the policy which causes the injurious result." *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987). However, Williams has not sufficiently pled (1) a practice or custom (2) that was sanctioned by a final policymaker for the City and (3) that contributed to his injury.

**First**, Williams has not adequately alleged a repeated, widespread unofficial custom sufficient to survive a motion to dismiss. To plead such a custom, Williams presents the following allegations: twenty-four instances of alleged police misconduct, spanning from 2005 to 2020; a 2014 investigation by the Civilian Investigation Panel ("CIP") regarding structural concerns with the CIP's investigative powers; a 2016–2017 study by the Miami Police Department stating that 73% of all complaints were closed with no finding; and a 2003 Department of Justice investigation and a follow-up investigation in 2013 regarding failures of the Miami Police Department's investigative procedures. (ECF No. 1-1 at ¶¶ 37–38, 40–44, 48.) The City responds only to the allegations concerning the twenty-four incidents of alleged misconduct, essentially arguing that twenty-four occurrences of misconduct is not so bad for a large police department. (ECF No. 7 at 10.)

The Court rejects the Defendants' contention that twenty-four alleged instances of police misconduct is insufficient as a matter of law. Indeed, courts have found that fewer alleged incidents were sufficient to plead an unofficial custom or practice. *See Rivas v. Figueroa*, No. 11-23195-Civ, 2012 WL 1378161, at *1, 3 (S.D. Fla. Apr. 20, 2012) (Scola, J.) (denying motion to dismiss where the plaintiffs alleged "in great detail, sixteen alleged instances" of officers who engaged in similar conduct and received no disciplinary action); *cf. Vasquez v. City of Miami Beach*, 895 F. Supp. 2d 1275, 1277–78 (S.D. Fla. 2012) (Martinez, J.) (denying motion to dismiss where the plaintiff alleged facts relating to thirty-eight incidents involving excessive force). Moreover, contrary to the Defendants' motion, the size of the Miami Police Department is largely irrelevant to Williams's claim. Williams alleges that Miami had an unofficial custom or practice of failing to adequately supervise and discipline officers. (ECF No. 1-1 at ¶ 95.) A custom or practice concerning a failure to supervise and discipline officers may exist even if it does not infect thousands of officers.

Nonetheless, Williams still fails to state a claim. First, the twenty-four instances of alleged police misconduct do not permit a reasonable inference of widespread practices "so permanent and well settled as to constitute a custom or usage with the force of law." *Brown*, 923 F.2d at 1481. Rather, these are largely sporadic and unrelated occurrences spanning fifteen years, and the nature of each incident varies widely. *See Bowe*, 2017 WL 5643304, at *5 (noting that the alleged custom must involve facts "substantially similar to the case at hand"). Moreover, there are not enough facts alleged to permit an inference that each of the twenty-four instances involved misconduct, as opposed to lawful (but perhaps unpleasant) activity. *See Whitake v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015) (Lenard, J.) (dismissing a claim for municipal liability, in part as the plaintiffs did not allege whether the "other shootings were deemed unjustified, unconstitutional, or were anything other than legitimate, self-defense shootings"). Take for example the Plaintiff's conclusory allegations pertaining to an alleged unlawful detention at a casino in 2017 and the threatened detention of a homeless individual in 2016. (ECF No. 1-1 at ¶ 48(f), (k).) These, and allegations like them, do not sufficiently allege a widespread custom or practice that is "obvious, flagrant, rampant, and of continued duration." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999). The other pieces that Williams points to, such as the CIP report and DOJ investigation, are similarly outdated and largely concern structural gaps in investigative procedures, rather than a failure to conduct sufficient investigations. These allegations fail to adequately plead a widespread and well-settled custom with the force of law.

**Second**, Williams does not allege that any of the City's final policymakers knew of the alleged custom and deliberately failed to take action or were otherwise deliberately indifferent. *See Brown*, 923 F.2d at 1481; *see also Whitaker*, 126 F. Supp. 3d at 1324. Williams alleges that the Miami Police Department is aware of the asserted custom and that the City sanctioned this custom. (ECF No. 1-1 at ¶¶ 95, 98.) But Williams does not identify any policymaker responsible for the allegations lodged against the City. *See Whitaker*, 126 F. Supp. 3d at 1324. Failure to allege a final policymaker is critical, as only such policymakers may render a municipality liable under Section 1983. *See Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996) ("Only those officials who have final policymaking authority may render the municipality liable under § 1983.").

**Third**, Williams has failed to allege causation. Williams must allege that the City's failure to supervise and discipline contributed to his injury—the beating that Williams suffered from Officers Hernandez, Allen, and Gonzalez. *See Brooks*, 813 F.2d at 1193 ("[T]he municipality must be at fault in some

sense for establishing or maintaining the policy which causes the injurious result."). Here, Williams alleges that the alleged custom or practice led to his injuries as the officers "knew they could abuse their power with impunity." (ECF No. 1-1 at ¶ 100.) This amounts to no more than a conclusory assertion. Therefore, Williams does not allege, other than in broad conclusory terms, how the City's alleged failure to supervise and discipline officers in general contributed to Officers Hernandez, Allen, and Gonzalez beating him on September 22, 2019.

One additional point merits brief discussion. Williams argues that it "follows from common sense" that the City conducts meaningless investigations into complaints of officer misconduct. (ECF No. 8 at 7.) But the law does not follow common sense. Rather, as Lord Coke famously proclaimed, law largely abides by "artificial reason." *See Prohibitions del Roy*, 12 Co. Rep. 63, 65 (1608). What may appear to be common sense to a bystander is not necessarily sufficient to state a claim in a court of law. And while courts are tasked with enforcing the "preservation of human liberty and human rights" embedded in Section 1983, *see Monell*, 436 U.S. at 684, the fact that there are repeated allegations of misconduct that appear to go unpunished in a police department alone does not suffice to allege *Monell* liability. Otherwise, unrelated and unpunished allegations of officer misconduct alone would render almost "every large metropolitan police force" potentially liable. *Whitaker*, 126 F. Supp. 3d at 1322–23 (quoting *Carter v. District of Columbia*, 795 F.2d 116, 123 (D.C. Cir. 1986)). While Williams has marshalled various disparate incidents of alleged police misconduct and asserted that these incidents went unpunished, Williams does not allege facts permitting an inference of an illegal custom or practice within the Miami Police Department that contributed to his injury and that the City of Miami has sanctioned.

### 4. Conclusion

For the reasons stated above, the Court **grants in part and denies in part** the Defendants' motion to dismiss (**ECF No. 7**).

**Done and ordered** in Miami, Florida, on October 27, 2021.

Robert N. Scola, Jr.
United States District Judge